Jasen, J.
(dissenting). I agree with the majority that “ Deep Throat ” is hard-core pornography and that the defend *525 ant, a corporation, was not entitled to a jury trial. The only issue which divides the court is whether the court may properly impose a fine, “ not exceeding double the amount of the corporation’s gain from the commission of the offense ”, computed from the date of the institution of charges to the date of conviction.
On August 17, 1972, Patrolman Michael Sullivan viewed the film “ Deep Throat ” being exhibited by the defendant, in the presence of Criminal Court Judge Rosenbebgeb, who, after witnessing the film in its entirety, found probable cause to believe it to be obscene. On August 29, 1972, Patrolman Edwin Buhler also viewed the film and filed a criminal court complaint charging the defendant with promoting an obscene film. Criminal prosecutions were commenced against defendant by the service of a summons, charging defendant with the exhibition of an obscene film in violation of section 235.05 of the Penal Law. After a number of delays, primarily attributable to the defense, the trial began on December 19, 1972. On March 1,1973, the court found defendant guilty of both charges. From the date of the commencement of criminal proceedings to February 25, 1973, defendant continued, without interruption, to exhibit the film. At the conclusion of a hearing, following conviction, held pursuant to subdivision 3 of section 80.00 of the Penal Law to determine, the amount of the defendant’s gain from the commission of the crime as a basis for determining the amount of the finé to be imposed, the Trial Judge found, in accepting defendant’s own records and figures, that from a gross exceeding $1,000,000, the defendant’s net profit from exhibiting the film from August 21, 1972, when defendant was officially apprised of legal proceedings, to February 25, 1973, when it ceased to be shown, was $152,924. Although the court was of the opinion that, based on these conceded figures, it could impose a fine up to $305,848, “ a fair and reasonable fine ” of $100,000 was imposed.
Section 80.10 (subd. 1, par. [e]) of the Penal Law provides that upon conviction a corporation may be sentenced to pay a fine not exceeding “ double the amount of the corporation’s gain from the commission of the offense.” Subdivision 3 of the same .section incorporates subdivision 3 of section 80.00, *526 which provides that ‘ ‘ ‘ gain. ’ means the amount of money or the value of property derived from the commission of the crime ” and permits the court to conduct a hearing to determine the amount of the defendant’s gain. These sections were added to our Penal Law by .chapter 1030 of the Laws of 1965, which act also revised our entire Penal Law.
Defendant argues on this appeal that the fine imposed “ is unreasonable, unusual., improper and unjust and therefore is constitutionally violative of article I, section 5 of the New York State Constitution, and Amendment 8 of the Federal Constitution.” Defendant further argues that such a fine may be based only on the gain it realized from the two showings specified in the criminal informations. This reasoning taken one step further would even prevent the sentencing court from looking to defendant’s total net gain from the several showings of the film on these two days merely because the complaining officers had only seen one exhibition on each of said days. Followed to its logical conclusion, defendant’s argument is that such a fine could be sustained only if the New York City Police Department had made one of its patrolmen a full-time “ Deep Throat ” viewer so that criminal informations could be filed charging multiple daily showings of the film over its total run of 37 weeks.*
While no legislative 'history regarding these sections has been found, it is inconceivable that the Legislature intended to impose such an. onerous burden on law enforcement officials. Prior to the enactment of these sections, the relatively small fines authorized by the former Penal Law as sanctions against corporate criminals were generally ineffective. The Legislature addressed itself to this infirmity in the law by authorizing the imposition of meaningful criminal sanctions against criminal corporate defendants. Since the imposition of substantial fines in our revised Penal Law was intended by the Legislature to take the profit out of crime, we should give meaning and effect to such clear legislative intent by empowering a sentencing court to compute the corporation’s gain from the illicit enterprise *527 from the date it was formally charged with promoting the obscene film to the date it ceased the presentation. It seems only reasonable and logical that a defendant who is charged with a violation after a finding of probable cause ceases exhibiting the obscene film pending the prompt disposition of the case should be penalized less than one who 'flauntingly continues uninterrupted to present for profit the same obscene film for many months. Certainly, a penalty which does not take into consideration the entire course of criminal conduct does nothing to deter would-be corporate criminals; on the contrary, by allowing the corporate criminal to retain virtually all of its illegal earnings, such token penalties serve only to encourage illegal conduct. I think our system of criminal justice has fallen well short of its goal of “ equal justice under the law ” if our courts cannot impose a sentence upon a corporation convicted of wrong-doing which punishes the corporation as severely as a sentence of imprisonment punishes an individual.
In my view, the addition of these, penalty sections as a part of the revision of the Penal Law in 1965 represented a substantial change from prior law. If these sections are interpreted as authorizing fines based only upon the gain realized from the specific dates charged in the information, then the sections are totally ineffective and in practice give sentencing courts no more power than they previously possessed. It seems illogical to conclude, as the majority apparently does, that the Legislature would have intended to enact a law which, while purporting to alter prior law, in effect left the law totally unchanged.
The better view, it seems to me, would be to interpret the Penal Law sections before us as authorizing the fine imposed upon the defendant corporation upon the grounds that once the accusatory instrument has been filed and there has been a judicial determination of probable cause, the corporation is on notice as to the illegality of its conduct, and, hence, continues its course of conduct at its own risk. This interpretation, of course, would have no application in the determination of guilt or innocence of the defendant, but would merely apply, after x conviction, to the criteria imposed at time of sentencing.
*528 Chief Judge Bbeitel and Judges Jones, Babin and Stevens concur with Judge Wachtleb; Judge Jasen dissents and votes to affirm in a separate opinion in which Judge Gabbielli concurs.
Order modified and the ease remitted to the Criminal Court of the City of New York, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

 As the Trial Judge noted, had such a procedure been followed, at some point the defendant would likely complain that the police conduct constituted harassment. (73 Misc 2d 773, 780.)